787 P.2d 288

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Virginia B. VALDEZ, aka Virginia B. Hale, Defendant–Appellant.**

No. 17186.

Court of Appeals of Idaho.

May 4, 1989.

Addendum Feb. 16, 1990.

being operated inside the house. They stopped an automobile as it was being driven away from the house, searched it without a warrant, and found some laboratory instruments. The officers then applied for a warrant to search the house, basing their probable cause partly upon the items found in the vehicle. A warrant was issued. The officers found a methamphetamine laboratory in the house, as they had suspected.

Valdez was arrested and charged with manufacturing a controlled substance. The prosecutor also charged her with being an accessory to a separate crime, aggravated battery, that allegedly had been committed by her husband. During her initial appearance before a magistrate, Valdez made a showing of indigency and requested an attorney. The request was granted and the public defender was appointed. Five days later the police, knowing that counsel had been requested and appointed, initiated a custodial interrogation. After being given *Miranda* warnings, Valdez made incriminating statements.

Valdez subsequently was bound over to the district court, where she moved to suppress the evidence seized from the house as well as the statements made during the interrogation. The district court denied her motion. She then entered a conditional plea of guilty to the manufacturing charge, while the prosecutor agreed to dismiss the accessory charge. After judgment was entered on the conditional plea, Valdez filed this appeal.

Kootenai County Public Defender by Roland D. Watson, Deputy Public Defender, Post Falls, for defendant-appellant.

Jim Jones, Atty. Gen. by Lynn E. Thomas, Sol. Gen., Boise, for plaintiff-respondent.

BURNETT, Judge.

In this appeal we focus upon a defendant's standing to challenge an illegal search and upon her right to counsel during a custodial police interrogation. For reasons explained below, we vacate the judgment of conviction in this case and remand for further proceedings.

The facts essential to our opinion may be summarized briefly. Police officers in Coeur d'Alene undertook surveillance of a house where Virginia Valdez was residing as a guest. The officers hoped to find Virginia's husband, for whom they held an arrest warrant. During the course of their surveillance, the officers came to suspect that a methamphetamine laboratory was

I

We first consider the search-and-seizure issue. Valdez argues that the warrant to search the house was invalid because the showing of probable cause for the warrant rested largely upon the evidence discovered during the warrantless search of the automobile. That search, Valdez contends, was conducted without probable cause and without reasonable suspicion to justify stopping the vehicle.

■ The district judge agreed. Accordingly, he held that the warrant to search the house was unsupported by probable

cause. However, he declined to suppress the evidence seized in the house, noting that the exclusionary rule was barred under the so-called "good faith" exception established by *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Valdez has questioned the applicability of *Leon* in the circumstances of this case. However, we find it unnecessary to resolve that issue because, in our view, Valdez lacks standing to attack the automobile search, upon which she has predicated her challenge to the search of the house.

Suppression is a remedy available only to persons whose constitutional rights have been violated. *State v. Cowen,* 104 Idaho 649, 662 P.2d 230 (1983). It is not available to a criminal defendant who claims merely that the government has violated another person's constitutional rights. *Id.* Thus, in order to prevail on her motion to suppress, Valdez was required to demonstrate a legitimate expectation of privacy in the automobile searched or in the items seized. *United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980); *State v. Holman,* 109 Idaho 382, 707 P.2d 493 (Ct. App.1985). She has not done so. Valdez neither owned nor occupied the automobile that was illegally searched. The items seized—laboratory hardware—did not intrinsically suggest the existence of a legitimate privacy interest. Consequently, no constitutional right personal to Valdez was violated by the search.

■ Of course, the real thrust of the suppression motion was directed not at the automobile search but at the ensuing search of the house. We will assume, for the sake of discussion, that Valdez had a legitimate privacy interest there. However, if a second search is the product of a first search, and a defendant's attack upon the second search is predicated wholly upon the invalidity of the first search, which the defendant has no standing to challenge, then the defendant has no claim to suppression of the fruits of the second search. Those fruits have not been tainted by any violation of the defendant's constitutional rights. *See, e.g., United States v. Chase,* 692 F.2d 69 (9th Cir.1982) (defen-

dant whose house is searched as result of unlawful detention of third party has no standing to claim search was tainted by unlawful detention); *State v. Brown,* 113 Idaho 480, 745 P.2d 1101 (Ct.App.1987) (defendant whose telephone was wiretapped upon warrant obtained after installation of pen register on third party's telephone line has no standing to claim wiretap was tainted by illegality of pen register). Accordingly, in this case, we hold that the district judge did not err when he denied the motion to suppress evidence seized in the house.

## II

■ We now turn to the interrogation question. Valdez contends that the police impermissibly abridged her constitutional right to counsel by initiating a custodial interrogation in the absence of an attorney, after counsel had been appointed at her request. We agree.

The right to counsel is "indispensable to the fair administration of our adversarial system." *Maine v. Moulton,* 474 U.S. 159, 168, 106 S.Ct. 477, 483, 88 L.Ed.2d 481 (1985). Because the ordinary layperson does not have the legal skill necessary to adequately defend himself, "[h]e requires the guiding hand of counsel at every stage of the proceedings against him." *Powell v. Alabama,* 287 U.S. 45, 69, 53 S.Ct. 55, 64, 77 L.Ed. 158 (1932). The right to counsel is provided expressly by the Sixth Amendment to the United States Constitution. It also is implicated by the Fifth Amendment's guarantee against compulsory self-incrimination. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Thus, the right to counsel exists in custodial police interrogations by operation of both the Fifth and Sixth Amendments. *See generally State v. Moulds,* 105 Idaho 880, 883, 673 P.2d 1074, 1077 (Ct.App.1983). The United States Supreme Court has reinforced this important right by holding that an accused person in custody who has "expressed his desire to deal with the police only through counsel, is not subject to further interrogation until counsel has been made available to him, unless the accused

himself initiates further communication, exchanges, or conversations with the police." *Edwards v. Arizona,* 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378 (1981).

*Edwards* dealt with the right to counsel in the context of a defendant's request for an attorney during a police interrogation. In *Michigan v. Jackson,* 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986), the Supreme Court broadened this context to include the interrogation of a defendant who previously had requested counsel during an arraignment. After giving the defendant his *Miranda* warnings, the police initiated an interrogation in counsel's absence. The defendant waived his *Miranda* rights and made incriminating statements. Holding that the statements should be suppressed, the Supreme Court rejected an argument— also made in this case—that any right to the assistance of counsel had been waived when the defendant received a *Miranda* warning and agreed to talk. The Supreme Court also rejected the notion that a request for counsel during an arraignment is made for a narrower purpose, or somehow is less deserving of recognition, than a request made during the interrogation itself.

The Court reiterated in *Jackson* that once the Sixth Amendment right to counsel has been asserted, the state has "an affirmative obligation to respect and preserve the accused's choice to seek this assistance." 475 U.S. at 634 n. 8, 106 S.Ct. at 1410 n. 8, quoting *Maine v. Moulton,* 474 U.S. 159, 170–71, 106 S.Ct. 477, 484–85. The Court concluded, "[I]f police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid." 475 U.S. at 636, 106 S.Ct. at 1411.

Here, the police initiated the custodial interrogation of Valdez after she had sought and obtained an appointment of counsel during her initial appearance before the magistrate. Consequently, under the clear rule of *Jackson,* any statements made during the interrogation must be suppressed. With respect to this issue, we are constrained to hold that the judge erred in denying the suppression motion.

Accordingly, the judgment entered upon the conditional plea of guilty is vacated. The case is remanded for further proceedings consistent with this opinion.

WALTERS, C.J., and SWANSTROM, J., concur.

### ADDENDUM

*The Court's prior opinion, dated May 4, 1989, remains in effect as supplemented herein.*

Part II of our lead opinion instructs the district court to suppress certain statements obtained from Valdez in violation of her right to counsel under *Michigan v. Jackson,* 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986). In a petition for rehearing, the state has argued that *Jackson* is distinguishable from this case, that Valdez never invoked her right to counsel and, in any event, that Valdez gave up her right to counsel by signing a *Miranda* waiver. We will deal with these contentions seriatim, and we will close with some observations about *Jackson* itself.

### A

In *Jackson* two defendants requested counsel during their arraignments on criminal charges. While still in custody after arraignment, each defendant was given *Miranda* warnings and was interrogated by the police in the absence of counsel. The defendants made incriminating statements which they later sought to suppress. The United States Supreme Court held that the post-arraignment statements had been obtained in violation of the defendants' right to counsel under the Sixth Amendment. As noted in our lead opinion, the Supreme Court laid down a bright-line rule:

[I]f police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's

right to counsel for that police-initiated interrogation is invalid.

*Jackson,* 475 U.S. at 636, 106 S.Ct. at 1411.

The instant case presents a similar scenario. Upon being charged by criminal complaint, Valdez made her initial appearance before a magistrate on February 13, 1987. She requested the appointment of counsel, completed a financial statement, and obtained the appointment of a public defender to represent her. (R. pp. 8–12.) On February 18, 1987, while Valdez was in jail, the police initiated an interrogation in the absence of counsel. After signing a *Miranda* waiver form, Valdez made incriminating statements which she subsequently moved to suppress.

■ Despite these similarities, the state argues that the present case is unlike *Jackson* because Valdez was not "arraigned" as were the *Jackson* defendants. The distinction is illusory. It is clear from the context of the Supreme Court's opinion that the "arraignment" in *Jackson* was a court appearance triggered under Michigan law by the defendants' arrests on formal charges. In Idaho, such a proceeding is called an "initial appearance" before a magistrate. We reserve the term "arraignment" for an appearance in district court by a felony defendant who has been indicted by a grand jury or who has been charged by information after a magistrate's determination of probable cause. I.C.R. 5, 10. This difference in nomenclature does not alter the applicability of *Jackson.* As demonstrated in the excerpt from *Jackson* quoted above, the Supreme Court fashioned its bright-line rule by reference to an "arraignment or similar proceeding." Such broad terminology is consistent with prior cases holding that Sixth Amendment rights are triggered by the commencement of adversarial judicial proceedings upon formal charges, regardless of how those proceedings are described. *E.g., United States v. Gouveia,* 467 U.S. 180, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984).

■ The state also has argued that *Jackson* is distinguishable because the defendants there were "precluded" from consulting with their counsel. The state apparently is pointing to the fact that one of the two *Jackson* defendants inquired about counsel after his arraignment and was not informed that a law firm had been appointed to represent him. 475 U.S. at 627, 106 S.Ct. at 1406. No such circumstance is mentioned, however, in connection with the other defendant. More fundamentally, nowhere in the Supreme Court's opinion is it suggested that the outcome of the appeal turned on any fact unique to one of the defendants.

■ Neither does it appear that *Jackson's* bright-line rule turns on the length of time between a defendant's request for counsel and the police interrogation. In *Jackson* this time frame was a single day for one defendant and three days for the other. In the case now before us, the time frame was five days. In cases decided in other jurisdictions, the *Jackson* rule has been applied to time frames of similar or longer duration. *See, e.g., Fleming v. Kemp,* 837 F.2d 940 (11th Cir.1988) (three to four days); *People v. Hoskins,* 168 Ill. App.3d 904, 119 Ill.Dec. 612, 523 N.E.2d 80 (1988) (two weeks); *Brown v. State,* 79 Md.App. 163, 556 A.2d 285 (1989) (eighteen days); *People v. Crowder,* 143 Ill.App.3d 85, 97 Ill.Dec. 293, 492 N.E.2d 952 (1986) (one month). Accordingly, we find no circumstance taking the present case outside the *Jackson* rule.

### B

■ We next consider the state's argument that Valdez never invoked her right to counsel. As we have explained, Valdez manifestly *did* assert her right to counsel during the initial appearance before the magistrate. Therefore, we assume that the state's argument actually is directed at her failure to re-assert a right to counsel during the police interrogation.

This argument appears to confuse a general right to counsel under the Sixth Amendment with a more limited right to counsel under the Fifth Amendment. The latter right, articulated by the United States Supreme Court in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16

L.Ed.2d 694 (1966), relates specifically to custodial interrogations. If our focus in this case were limited to what Valdez said—or did not say—during her interrogation on February 18, 1987, we would agree that no Fifth Amendment right to counsel under *Miranda* was asserted.

But this is not a Fifth Amendment case governed by *Miranda.* It is a Sixth Amendment case governed by *Jackson.* The Supreme Court made it clear in *Jackson* that if an accused person invokes his or her Sixth Amendment right to counsel, by requesting an attorney during court proceedings upon formal charges, the police may not later initiate an interrogation without counsel. As the Supreme Court noted, an accused person who asks the court to appoint an attorney has invoked "the right to rely on counsel as a 'medium' between him and the State." *Jackson,* 475 U.S. at 632, 106 S.Ct. at 1408 (*quoting Maine v. Moulton,* 474 U.S. 159, 176, 106 S.Ct. 477, 487, 88 L.Ed.2d 481 (1985)). In the present case, we hold that Valdez timely invoked her Sixth Amendment right to counsel.

### C

 We now turn to the state's assertion that even if Valdez invoked her Sixth Amendment right to counsel, she later waived it by signing the *Miranda* form during the custodial interrogation. The state invites our attention to discussions of waiver in the following cases: *Moran v. Burbine,* 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986); *State v. Bryan,* 551 A.2d 807 (Del.Super.Ct.1988); *State v. Fetterly,* 115 Idaho 231, 766 P.2d 701 (1988); *State v. Norris,* 244 Kan. 326, 768 P.2d 296 (1989); *Brown v. State,* 79 Md.App. 163, 556 A.2d 285 (1989); *State v. Stewart,* 53 Wash.App. 150, 765 P.2d 1320 (1989). In our view, these cases fail to support the state's position.

It appears that *Brown* has been·cited in error by the state. The court in that case adopted and applied the *Jackson* rule to police-initiated questioning that violated the defendant's Sixth Amendment right to counsel. The remaining citations—the Supreme Court's decision in *Moran* and the lower court decisions in *Bryan, Fetterly, Norris* and *Stewart*—are also misdirected. Each of these cases involved one or more custodial interrogations conducted *prior to* the filing of formal charges, and the commencement of adversarial judicial proceedings, on the crimes subject to interrogation. Consequently, no Sixth Amendment right to counsel had attached. These cases simply do not reach the Sixth Amendment question now before us.

Because *Fetterly* is an Idaho decision, its distinction from the present case is especially important. In *Fetterly* the Idaho Supreme Court recognized the *Jackson* rule, but found it to be inapposite. Fetterly had been arrested and charged with fraudulent use of a credit card. While free on bail, he was questioned about a murder. Because he had not been charged with that crime, his Sixth Amendment right to counsel had not attached with respect to the subject matter of the interrogation. Here, in contrast, the crimes with which Valdez was charged, and for which she requested counsel during her initial court appearance, were the same crimes on which she was questioned during the police-initiated interrogation. Thus, her Sixth Amendment right to counsel had attached. Under *Jackson,* the *Miranda* waiver procured from Valdez was invalid and her statements were suppressible.

### D

Although the state has urged us to find a way around *Jackson,* the real source of the state's discontent appears to be *Jackson* itself. We acknowledge that *Jackson* is not without its conceptual problems. As our lead opinion observes, *Jackson* creates a parallel between the Fifth and Sixth Amendment rights to counsel. It prohibits police-initiated interrogations after the Sixth Amendment right has been invoked, just as police-initiated interrogations are prohibited after the Fifth Amendment right has been invoked. *See Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). But there are limits to this parallelism. The Sixth Amendment right to counsel may be invoked only with

respect to crimes charged, *Maine v. Moulton, supra*, while invocation of the Fifth Amendment right has been held to preclude questioning on any crime under investigation. *Arizona v. Roberson*, 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988).

Moreover, *Jackson's* parallelism focuses upon the defendant's act of requesting counsel during a court appearance. Yet it has been said a defendant's Sixth Amendment right to counsel is automatic; unlike the Fifth Amendment right, it does not depend upon an affirmative request. *Jackson*, 475 U.S. at 641, 106 S.Ct. at 1413 (Rehnquist, J., dissenting); *compare Patterson v. Illinois,* 487 U.S. 285, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988) (holding that if the Sixth Amendment right to counsel has *not* been invoked by an explicit request for counsel, then a subsequent *Miranda* waiver is effective for *both* Fifth and Sixth Amendment purposes).

Nonetheless, these conceptual entanglements do not alter the fundamental fact that *Jackson* is the law of the land with respect to all cases coming within its bright-line rule. We are bound by it here. We have no reason to believe that Idaho law enforcement practices generally are in conflict with *Jackson*. Indeed, as noted by the capable attorney who represented the state during the suppression hearing in this case, the police-initiated interrogation of a defendant without counsel—after counsel has been requested in open court—"may seem a bit unusual, and it probably is. It's certainly not usual in this county...." (Tr. Vol. 1, p. 54.)

In compliance with *Jackson*, we adhere to our original decision vacating the judgment of conviction and remanding this case. The state's petition for rehearing is denied.

WALTERS, C.J., and SWANSTROM, J., concur.